[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
DECISION
This case was tried before the court sitting without a jury, the subject matter of which is a boundary dispute between two adjoining landowners. The Plaintiff, Oscar Sylvia, Jr., is the owner of a three quarter acre parcel of land situated on the westerly side of East Main Road in Little Compton, Rhode Island identified as Lot 43 of Tax Assessor's Plat 28. The Defendants, Thornton and Gertrude Simmons, are the record owners of a 16 to 20 acre parcel of land located on the westerly side of East Main Road, identified as lot 42 of Tax Assessor's Plat 28. The Plaintiff and the Defendants share a common boundary line.
At issue in this matter is a strip of open land approximately 12 to 13 feet in width, and approximately 255 feet in length. The Plaintiff's property borders the southerly portion of the area in question while the Defendants' parcel borders the northerly boundary of the disputed strip of land. The Plaintiff seeks to establish ownership of the land by way of the terms and conditions of his deed. At the same time, Plaintiff claims to be the owner of the land through adverse possession. The Defendants, meanwhile, maintain that they are the record owners of the strip of land in question.
In regard to the adverse possession claim set forth by the Plaintiff, the Rhode Island Supreme Court has held repeatedly that in order to constitute the required element of adverseness, possession must be actual, open, notorious, hostile, continuous and exclusive. LaFreniere v. Sprague, 108 R.I. 43,271 A.2d 819, 822 (1971). This court finds that there was insufficient evidence presented in order to establish that the Plaintiff's use of the land in question was hostile. More specifically, this factfinder finds as a matter of fact that the Plaintiff's use of the land in question for the limited purpose of mowing the grass and occasionally passing over it would not reasonably be enough to make the Defendant aware that ownership rights were adversely being asserted over such property. Since hostility is an essential element of proof where one asserts ownership by way of adverse possession, the Plaintiff has failed to meet his burden.
Accordingly, the Court must focus on whether the Plaintiff has established title to the property by virtue of the deeds about which the court heard testimony. At the outset, the court notes that the prevailing rule of law with respect to references to both markers and distances in a deed, is that boundary markers take precedence. See 12 Am.Jur.2d Boundaries § 73 (1964). In the case at bar, both monuments and distances are referred to in the deed. Therefore, in accordance with the above stated rule of law, distances must yield to the monuments. However, the one marker which is still in place is being challenged. Furthermore, at least one other marker has been removed, the only remaining evidence of which is a hole in the ground where the marker once stood.
Before looking to the distances involved here, the court must first determine whether the markers which exist are those which were designated in the original deed. In this regard, the court finds that the stone bound located at the northwest corner is the marker called for in the deed. In addition, the court finds that the hole in the ground is sufficient to demonstrate that at one time there was a marker at the point where the northeast boundary of Plaintiff's land meets the southeast corner of the Defendants' property.
The testimony of the Plaintiff's expert as to the accuracy of the existing bound as well as the hole which apparently is all that remains of the other marker, was persuasive. To this end, it is helpful to describe the terms and conditions of the deed from William T. Simmons III to Oscar M. Sylvia, the Plaintiff's father. The deed states that the southerly boundary is 200 feet, more or less to a stone wall. The deed then provides that the property line goes in a northerly direction 100 feet, more or less to a stone or concrete bound set in the ground "near the last mentioned stone wall."
With respect to the descriptions contained in the deed, the Plaintiff's testimony describing the remnants of the white fence and iron post which was in the ground at the northeast corner of his premises was persuasive. The Plaintiff's testimony is made more compelling as a result of the testimony offered by Nathaniel Simmons, a neighbor of the Plaintiff. Mr. Simmons offered testimony to the effect that the boundary line where the hedges are located has been in existence for many years. He also testified that some 40 years ago he inserted a pipe in the ground in the northeast corner of the parcel and that he recently inspected this same area and found the hole in the ground where the pipe once was. Consistent with this testimony was the testimony offered by another neighbor of the Plaintiff, Adelbert Gifford. He indicated that from the time he acquired title to his property in 1961, the hedge which runs parallel to the monument in the northeast corner was considered by him to be the proper boundary line. Thus, in light of the fact that the fence which once existed was perpendicular to the hedges which are currently in line with the one concrete marker that still stands, the court finds it logical to infer that the concrete bound as well as the hole in the ground were indeed part of the original boundary line.
It is the opinion of this Court that the evidence adduced at trial preponderates in favor of the Plaintiff with respect to the original monuments described in the deed. Thus, the Court can only conclude that if they do not conform to the respective distances which are called for, it is because the deed was drafted in an era when the taking of measurements was not done with a great deal of precision and often times may have consisted of merely pacing off the distances without the use of a measuring device. The fact that land was often measured in this manner was alluded to in the testimony of Plaintiff's expert witness, Mr. Amarantes.
Accordingly, the Court accepts the two markers which are contiguous to the hedge as being the boundary line of the Plaintiff's property. Furthermore, the court establishes that the boundary between Plaintiff's lot (Assessor's Plat 28, Lot 43) and Defendant's lot (Assessor's Plat 28, Lot 42) is that line which runs from the northeast corner to the northwest corner of Plaintiff's property, inclusive of the area in dispute. The Court finds any other conclusion to be totally illogical in the sense that the parcels would then be irregular in shape as opposed to being rectangular, as is ordinarily the case. Counsel are directed to prepare a form of judgment consistent with this decision including the form of recording to be made in the Little Compton land evidence records office.